UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, ex rel.; RAVINDER KHAIRA, M.D., an individual,<br><br>Plaintiffs and Relator,<br><br>v.<br><br>BLUE CROSS OF CALIFORNIA, INC., a California corporation, et al.,<br><br>Defendants. | No. 2:18-cv-02790-MCE-JDP<br><br>**MEMORANDUM AND ORDER** |

This lawsuit was originally filed under seal on October 18, 2018, pursuant to the qui tam provisions of the federal False Claims Act, 31 U.S.C. §§ 3729, et seq. ("FCA"), and California's False Claims Act, California Government Code §§ 12650, et seq. The remaining Defendants are Blue Cross of California, Inc., Blue Cross of California Partnership Plan, Inc., and Anthem, Inc. (together, the "Blue Cross Defendants"), which are private health plans, along with executive employee David Mosher ("Mosher") (collectively with the Blue Cross Defendants, "Defendants"). The so-called "Relator" plaintiff, Ravinder Khaira, M.D., ("Relator" or "Plaintiff") is a board-certified pediatrician who is the majority owner of four professional medical groups operating clinics in the greater Sacramento area. Relator seeks to recover damages resulting from the Blue

1

Cross Defendants' alleged underpayment for services under the Patient Protection and Affordable Care Act ("ACA").  Presently before the Court are two Motions to Dismiss (ECF Nos. 43, 50) Relator's First Amended Complaint (ECF No. 19) ("FAC") filed by the Blue Cross Defendants and David Mosher.[1]  For the following reasons, both Motions are GRANTED with leave to amend.[2]

## BACKGROUND[3]

The ACA expanded the nation's Medicaid program, which provides health coverage to millions of Americans, including eligible low-income adults, children, pregnant women, elderly adults and people with disabilities.  Medicaid is administered by states, according to federal requirements.  The program is funded jointly by states and the federal government.  Because of the ACA expansion of Medicaid, Congress authorized an increased payment to primary care physicians to encourage those physicians to participate in the Medicaid program and treat the increasing number of Medicaid beneficiaries.  Congress increased reimbursement from the notoriously low Medicaid rate to the Medicare rate or (for some services) the Regional Maximum Fee Schedule Rate, for services provided in two years, 2013 and 2014.  ACA Section 1202 ("ACA 1202") provides for this increase.

The federal government footed the entire bill of the Medicaid expansion including the increased payments to physicians under ACA 1202.  The states were then obligated to pay that money to qualifying physicians that treated Medicaid beneficiaries.  In California, the Medicaid program is called Medi-Cal and is administered by the California

---

[1] Because Mosher joins in the Blue Cross Defendants' Motion, ECF No. 50-2, at 5, and because the Court addresses only arguments raised therein, it cites to the Blue Cross Defendants' papers, but references the arguments as made by all Defendants generally.

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

[3] Unless otherwise indicated, the following facts are taken, primarily verbatim, from the FAC.

Department of Healthcare Services ("DHCS"). Much of the Medi-Cal program is delegated to private health plans, like the Blue Cross Defendants, that are "Managed Care Organizations" ("MCOs").

Under ACA 1202, ACA funds were issued to MCOs pursuant to statutory and regulatory requirements. MCOs were not required to make requests for payment. The MCOs were then, in turn, contractually obligated to disburse those funds to providers. Payments were made to MCOs starting in January 2014. See Decl. of Darcy L. Muilenberg, ECF No. 43-4, ¶ 5, Ex. C at 2.[4]

In addition, with regard to this program, DHCS changed from a "reconciliation" process, which would have required the MCOs to pay back to California any amounts not paid to physicians, to a "full risk," "capitated" arrangement that allowed MCOs to keep any ACA 1202 amount they did not pay out. "Full risk" meant MCOs would have a loss if the payments out to physicians exceeded the ACA 1202 amount DHCS paid to them. But if Defendants paid out less than the amount DHCS gave them, then Defendants could keep the money. There was no reconciliation.

According to Relator, after switching to the "full risk" model, Defendants began misleading DHCS by submitting documents generally stating that they would fully comply with ACA 1202, but failing to disclose that they did not actually intend to do so. The earliest these alleged certifications would have been provided was February 2014. See Muilenberg Decl., ECF No. 43-4, ¶ 6, Ex. D at 1.

In the meantime, according to Relator, Defendants failed to inform DHCS that they had instructed providers to bill the Child Health and Disability Program ("CHDP") payment rate rather than the physicians' usual billed charges prior to 2013. Unbeknownst to DHCS or the federal government, this operated to cap the ACA 1202 reimbursement at the old CHDP rate rather than paying at the rate established by ACA 1202.

---

[4] This document, All Plan Letter ("APL") 13-010, may be considered because, among other things, it is incorporated by reference in the FAC. Defendants' Request for Judicial Notice is thus GRANTED.

For its part, despite Relator's foregoing allegations, DHCS was purportedly aware that at least some physicians still billed the old CHDP rate and that this might cap ACA 1202 payments at a lower than intended rate. Consequently, for claims paid directly by CHDP, DHCS allowed physicians to submit an "attestation" as to their actual billed charges. By doing this, CHDP could insure that physicians were paid the ACA 1202 amounts based on their actual billed charges, rather than being paid the old CHDP rate. DHCS also purportedly instructed MCOs to request that physicians submit an "attestation" as to their billed charges. The purpose of the "attestation" was to have MCOs use the physicians' usual billed charge when calculating ACA 1202 payments, rather than the CHDP rate which was lower than the physician's usual billed charge. Defendants, however, decided not to request these attestations from physicians and purportedly concealed that fact from DHCS.

The effect of Defendants' efforts was allegedly that Defendants kept for themselves millions of dollars that the federal government and DHCS intended to go to physicians who treated Medi-Cal families. With respect to Relator and his clinics, he contends that Defendants improperly kept over $619,000 of ACA 1202 money that should have been paid to him.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

4

detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. To meet the requisite particularity standards on a case like the present one, which asserts claims under the federal FCA, Relator's allegations must be accompanied by the "who, what, when, where, and how of the misconduct charged." Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010) (quoting Vess v. Ciba-Geigy Corp., U.S., 317 F.3d 1097, 1106 (9th Cir. 2003)). In the Ninth Circuit, "it is sufficient to allege 'particular' details of a

1  scheme to submit false claims paired with reliable indicia that lead to a strong inference
2  that claims were also submitted." Id. at 998-99 (citation and internal quotation marks
3  omitted).
4       A court granting a motion to dismiss a complaint must then decide whether to
5  grant leave to amend.  Leave to amend should be "freely given" where there is no
6  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
7  to the opposing party by virtue of allowance of the amendment, [or] futility of [the]
8  amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
9  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
10 be considered when deciding whether to grant leave to amend).  Not all of these factors
11 merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .
12 carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
13 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
14 "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest
15 Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d
16 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th
17 Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . .
18 constitutes an exercise in futility . . . .")).

## ANALYSIS

The FCA imposes liability on "any person who—(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).  A "claim" is "any request or demand . . . for money or property." 31 U.S.C. § 3729(b)(2)(A).  "The essential elements of an FCA claim are (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." United States v. Corinthian Colleges, 655 F.3d 984, 992 (9th Cir. 2011).  Defendants seek

dismissal of Relator's FAC arguing, among other things, that he did not plead the existence of a claim or how the claim was material to the government's decision to pay the MCOs. Each argument is addressed in turn.[5]

### A.    The FAC does not allege submission of a claim.

Defendants contend that Relator failed to allege facts that could establish the existence of a claim and instead offers only conclusory allegations that "Defendants . . . presented false and fraudulent claims for payment for services provided . . . . " See Blue Cross Mot., ECF No. 43-2, at 11 (quoting FAC ¶ 120) (internal quotation marks omitted). Otherwise, Defendants contend, Relator focuses his allegations on Defendants' acceptance of rather than demand for funds. Id. To that end, Defendants point out that "[a]cceptance of the ACA 1202 funds was contractually required of all the MCOs, including the Blue Cross Defendants." Id. at 12. The Court agrees that no claim has been adequately pled.

Based on the allegations in the FAC, Defendants were never required to request funds in any capacity. Instead, the ACA 1202 funds were paid out pursuant to statutory and regulatory requirements, not in response to any request from Defendants. In turn, MCOs were required by contract to accept those funds without ever making a demand. Under this particular scheme, MCOs are simply not tasked with making claims.

In opposition, Relator argues that "there is binding Ninth Circuit case law explicitly finding that false certification of compliance with regulatory provisions in a capitated payment arrangement is a 'claim' for FCA purposes." Relator's Opp., ECF No. 12, at 12. But that is not quite accurate. While such certifications can at times be used to show that a claim was false, the case law still requires that some sort of request for money be made.

---

[5] The Court notes that the United States filed two Statement of Interests (ECF No. 54, 60) in this case. The United States was primarily concerned that Defendants' arguments could be construed to suggest that: (1) "the FCA never reaches claims submitted by managed care organizations," ECF No. 54 at 4; (2) "the FCA narrowly reaches *only* conduct encompassed by Section 3729(a)(1)(A)," id.; and (3) "a breach of contractual obligations can *never* form the basis of an FCA claim," id. at 5. The Court does not read Defendants' briefs to assert any of these positions. Accordingly, they need not be addressed further.

Relator's own authority illustrates the point. See United States ex rel. Silingo v. Wellpoint, Inc., 904 F.3d 667 (9th Cir. 2018). Silingo was a Medicare Advantage case challenging payments made under a capitated system where rates paid depended on the relative healthiness of an MCO's enrollment base. Because it was not possible to confirm all of the diagnoses underlying this enormous data set, safeguards were implemented to ensure the data was accurate. For example, "it [was] an express condition of payment that a Medicare Advantage organization certify (based on best knowledge, information, and belief) that the risk adjustment data it submits are accurate, complete, and truthful." Id. at 673 (quoting 42 C.F.R. § 422.504(l)(2)) (internal quotation marks and alterations omitted)). The relator in that case proffered that those defendants' certifications were in fact false and thus had been used to generate fraudulently inflated payments to the MCOs. Based on those allegations, that court concluded that the relator had adequately stated an FCA claim. According to Relator, since Silingo involved a capitated payment system and that court determined false certifications could violate the FCA, it is dispositive here.

However, the Silingo payment system is materially different from this one. In Silingo, those certifications were made "as part of [the MCOs] requests for payment." Id. at 679. Here, no such requests must be made to trigger disbursement of funds. Instead, payments to the MCOs, and the MCOs' acceptance of funds, are required automatically pursuant to statutory, regulatory, and contractual requirements, not in response to any demand or request by Defendants. Because any alleged certifications in this case are untethered to any demand for money, there is no claim, and thus no violation of the FCA has been stated. See United States v. Honolulu Cmty. Action Program, Inc., No. 16-00062, 2019 WL 4739283, at *3 (D. Haw. Sept. 27, 2019) ("[W]ithout a claim for payment—regardless of the alleged existence of fraud—there can be no violation of the FCA.").

**B. Nor does the FAC allege that any purportedly false statements were material.**

1	Even if Plaintiff had adequately alleged that Defendants made a claim under the

2	FCA, they contend Relator has nonetheless failed to allege materiality.  The FCA

3	"defines 'material' to mean 'having a natural tendency to influence, or be capable of

4	influencing, the payment or receipt of money or property.'"  Universal Health Services,

5	Inc. v. United States, 579 U.S. 176, 182 (2016) (quoting 31 U.S.C. § 3729(b)(4)).  "The

6	materiality standard is demanding."  Id. at 194.  "The False Claims Act is not an all-

7	purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract

8	or regulatory violations."  Id. (internal quotation marks and citation omitted).

9	Given this, Defendants contend that Plaintiff cannot plead materiality "in light of

10	the structure of ACA 1202."  Relator's Mot., ECF No. 43-2, at 14.  More specifically,

11	Defendants take the position that:

> Unlike other FCA cases where a party requests government funds and must certify compliance with the law in order to receive such funds, the payment structure for the ACA 1202 program ran from the top down rather than from the bottom up. The federal government developed the framework for distributing the ACA 1202 funds to the states, and California issued payments to the MCOs, requiring disbursement to physicians. FAC ¶¶ 71-73, 83.  DHCS required compliance with the law through its APLs and contracts with MCOs, but did not condition payment to the MCOs on compliance.  Hence, the alleged conduct did not change the government's payments to the Blue Cross Defendants.

Id. at 14-15 (footnote omitted).  According to Defendants then:

> [T]he amount paid to the Blue Cross Defendants was not dependent on any certification. If the government would pay the same capitated amount regardless of the defendant's alleged misrepresentations, those misrepresentations are not material.

Id. at 18.  Again, the Court agrees.

ACA 1202 payments to MCOs were calculated and paid without regard to any

data certification from the Blue Cross Defendants.  In fact, the funds were paid out prior

to any certification even being required.  Setting aside conclusory allegations that the

Court disregards, nothing in the FAC indicates that any certifications by the Blue Cross

Defendants would have affected the amount of payments they received or whether

payments were made at all.

This of course differentiates this case from those like <u>Silingo</u>. 904 F.3d at 667. In that case, data falsification would have directly led to inflated payments. <u>Id.</u> at 679. The same is not true here, where the payments were calculated and made prior to any action being required of Defendants. It follows that materiality is insufficiently pled. <u>See</u> <u>Honolulu Cmty.</u>, 2019 WL 4739283, at *7 (no materiality when funds would have been paid regardless of data submitted). Because the Court concludes Relator's allegations are insufficient to plead either a claim or materiality, it need not reach the remainder of Defendants' arguments, and each of Relator's claims is DISMISSED with leave to amend.[6]

**CONCLUSION**

For the reasons set forth above, both Motions to Dismiss (ECF Nos. 43, 50) are GRANTED with leave to amend. Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Relator may, but is not required to, file a second amended complaint. If no second amended complaint is timely filed, this action will be deemed dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated:  March 7, 2024

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] It does appear that Relator has not stated claims under California law in any event because the federal government, as opposed to California, funded Defendants' ACA 1202 payments. <u>See</u> Defs.' Mot., ECF No. 43-2, at 12 n.5 (citing FAC, ¶ 54). Relator does not address this point in his opposition, so Defendants' Motion is GRANTED with leave to amend as to the state causes of action on this basis as well. <u>See</u> <u>Honolulu Cmty.</u>, 2019 WL 473283, at *3.